THE PEOPLE *ex rel.* James A. Meade, Appellant, *vs.* THE BOARD OF REVIEW OF COOK COUNTY *et al.* Appellees.

*Opinion filed February 24, 1928—Rehearing denied April 10, 1928.*

1. MANDAMUS—*pleadings are the same as in actions at law.* A proceeding for the writ of *mandamus* is an action at law, the petition is in the nature of a declaration, and the pleadings are governed by the same rules as apply to other actions at law.

2. SAME—*answer as a whole must be sufficient.* If a defendant to a petition for *mandamus* chooses to answer, the practice is not the same as that in chancery, where exceptions may be sustained to improper parts of the answer and such parts eliminated, leaving the remainder to stand, but the defense set up by the answer as a whole must be sufficient.

3. SAME—*demurrer to answer admits denials and new facts alleged.* The facts alleged in a petition for *mandamus* and not denied by an answer thereto are admitted, and a demurrer to the answer admits the denials of the answer and any new facts alleged therein.

4. TAXES—*rule 11 of the State Tax Commission for assessing capital stock of corporations is valid.* Rule 11 of the State Tax Commission, which provides that in assessing the capital stock of corporations the market value of the shares and the indebtedness

of the corporation shall be equalized on a uniform basis with other property throughout the State before deducting therefrom the equalized value of the tangible property, is valid and is properly applied in accordance with an admitted custom to assess all property at an equalized or assessed value instead of its actual value, as otherwise a deduction of the equalized value of tangible property from the full value of the sum of the capital stock and indebtedness would produce an excessive valuation of the capital stock.

APPEAL from the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

HENRY M. ASHTON, EDWARD M. WINSTON, and EDWIN HAMILTON, for appellant.

ROY MASSENA, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

James A. Meade, a citizen and tax-payer of Cook county, filed a petition against the board of review in the circuit court of that county for a writ of *mandamus* commanding it to assess the fair cash value of the capital stock of many corporations named in the petition, including the franchise and debt over and above the assessed value of the tangible property of such companies for the year 1926. An answer was filed, to which the petitioner demurred, the demurrer was overruled, and the petitioner electing to stand by his demurrer the petition was ordered dismissed at his costs, and he has appealed.

The petition alleged, among other things, that the board of assessors had neglected and refused to assess the capital stock of said corporations except as to certain of them, as to which that board had made an arbitrary assessment of so small an amount as to represent a small proportion of the true value of the capital stock, and such assessments were not the result of the honest judgment or discretion of the board but were deliberately and intentionally made with intent to give an unlawful preference to such corporations,

and are unlawful; that the books of the board of assessors were turned over to the board of review about September 1, 1926, and it thereupon became the duty of the board of review to assess the capital stock of each of the companies that was not assessed on its true capital stock according to law; that the board of review failed to assess any of said corporations according to law for the year 1926, but, on the contrary, confirmed the improper and inadequate assessments made against such corporations, and unless ordered by the court will not make any assessment of capital stock value as to such corporations; that on December 1, 1926, there was delivered to the board of review, and each member thereof, a demand in writing setting forth the facts in regard to the failure to assess or the inadequate assessment of the capital stock of said corporations, but the board of review has taken no steps to comply with the petition or demands, and the members thereof have stated to the petitioner that they would not comply with his demands and would refuse to make any changes in the values so made by the board of assessors and confirmed by the board of review. A supplemental and amended petition was filed on February 1, 1927, showing that since the filing of the original petition the board of review had completed its assessments as to the capital stock valuation of the corporations named in the petition and made what it claimed to be the net assessment of capital stock, including the franchise, being the excess of the equalized value of the capital stock and debt over that of the tangible property as found by the local assessors and the board of review. The amount of the net capital stock assessment as to each of the corporations named was set forth in the petition, and it was alleged that the assessment made against each of said corporations was made by the board at so low a figure as to amount in law to no assessment, and it was therefore alleged that the assessments were fraudulent. It was further alleged that the board of review did not follow rule 11 of the State Tax

Commission in making its assessment of capital stock and followed no rule, but made a purely arbitrary assessment at a small amount as to some of the corporations and at no amount as to others, and that the capital stock valuations were not the result of any honest judgment or discretion on the part of the board and resulted in almost entirely omitting from taxation the capital stock valuations of the corporations.

The answer denied specifically the allegations of the petition that the assessments of the capital stock of the corporations were below the true value or below the proportion of true value borne by other classes of property in Cook county, or were made arbitrarily or without the exercise of the honest judgment and discretion of the members of the board, or that they were made with intent to give an unlawful preference to the corporations or any property owner. It denied that the board followed no rule in making the assessments, and denied specifically and in detail every allegation tending to show fraud or partiality, dishonesty or neglect of duty. It was alleged that the assessment was made in conformity to rule 11, and the facts in regard to making the assessment are set out, as follows: For many years it has been the well known, established and uniform custom of the different officers and bodies engaged in the assessment of property for taxation in Illinois not to fix the value of property at its full cash value but at a percentage of that value as its value for purposes of taxation, which was fixed at about sixty per cent, the percentage so adopted sometimes differing in different years, according to the valuation which was fair in the judgment of the different boards, commissions and taxing officers, in order to assess all property uniformly, as required by law. This custom was followed by the local assessors in the assessment for 1926, and their action resulted in valuing the property to which it was applied at an average throughout the State of eighty per cent, or less, of its fair cash value. As the

valuations of similar property and the percentages used for purposes of taxation of the same or different kinds of property by the various local officials have not been absolutely uniform, it has always been, and is, necessary to have those values equalized by some State board, and now by the tax commission, in order to comply with the law by making taxation uniform throughout the State. The answer further alleged that this custom has been so well known and well established for many years prior to 1926 that it had been recognized and approved as proper by the legislature and the courts as a valid method of securing uniformity in taxation throughout the State, and that the board of review found it necessary to proceed in substantially the manner stated· in rule 11 of the tax commission, and after it had determined from all proper sources of information the fair cash value of the capital stock, including the franchises of the corporations subject to assessment by it, and added to the amount so ascertained by it the amount of indebtedness, (except for current expenses, excluding from such current expenses the amount paid for the purchase or improvement of property,) that the board of review should equalize the amount so obtained in order that corporations should be assessed, as near as practicable, upon a uniform basis with other property throughout the State, and all of the methods provided for in rule 11 were in good faith followed by the defendants in making such assessments. In computing the net assessed value of the capital stock of each of the corporations the board ascertained the fair cash value of the capital stock from quotations of such shares in the market over a reasonable period of time and from such information as the board of review had or could obtain by diligent inquiry and by adding thereto the amount of indebtedness of each of such corporations (except indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property). It then equalized the amount so obtained by taking sixty per cent there-

of, which was the same percentage of value which all local assessors during the years 1925 and 1926, and for many years prior thereto, had taken in order to ascertain and fix the value of tangible property assessed by them. One-half the difference between the equalized value of the capital stock of such corporation so determined and the aggregate equalized value of its tangible property was then taken by the board of review as the actual assessed value of the capital stock of such corporation upon which the tax rate was figured, and the defendants alleged that this method of assessment was adopted and employed by the board of review in good faith, in accordance with rule 11 of the tax commission.

Rule 11 of the tax commission provides that for the purpose of ascertaining the fair cash value of the capital stock, including the franchise of corporations, the fair cash value of the shares of capital stock (consideration being given, among other things, to the value of the shares of stock and the quotation of such shares in the market over such a period of time as may be reasonable, also the books of said corporations and the returns heretofore made to the Auditor of Public Accounts or to the tax commission, and such information as the tax commission has or may be able to obtain,) and the amount of indebtedness (except indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property,) shall be combined or added together. The tax commission shall then equalize the amount so obtained so that said companies or associations shall be assessed, as near as practicable, upon a uniform basis with other property throughout the State. From the aggregate amount so determined and equalized as aforesaid there shall be deducted the aggregate equalized valuation of all tangible property of such corporations or associations, respectively, and one-half of the remainder, if any, shall be taken and held to be the assessed value of the capital stock of such corporations

or associations, including the franchises over and above the tangible property thereof.

The appellant argues that the answer was obnoxious to the demurrer because it complied with no rule of common law pleading. A proceeding for the writ of *mandamus* is an action at law, and the pleadings are governed by the same rules as apply to other actions at law. The petition is in the nature of a declaration. (*People* v. *Lueders,* 287 Ill. 107.) The statute permits a defendant to plead or answer, as he may elect. If he concludes to plead he may file as many pleas setting up separate and distinct defenses as he may choose. In such a case the relator may demur to any or all of the pleas, and the court will rule on the various pleas and determine as to each whether it separately states a good defense. If he chooses to answer, the practice is not the same as that in chancery, where exceptions may be sustained to improper parts of the answer and such parts eliminated, leaving the remainder of the answer to stand, but the defense set up by the answer as a whole must be sufficient. (*People* v. *Powell,* 274 Ill. 222.) The facts alleged in the petition and not denied by the answer are admitted. The denials of the answer and the new facts alleged in it are admitted by the demurrer to be true. The charges of fraud, neglect, dishonesty and intentional misconduct on the part of the members of the board are therefore eliminated from consideration, and the only questions left are whether rule 11 is valid and whether the allegations of the answer show that the proceedings of the board were in accordance with the rule. The rule is substantially the rule which has been used in assessing the capital stock of corporations for more than fifty years, which was approved in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, and in *State Board of Equalization* v. *People,* 191 id. 528, with the exception that the rule followed in those cases required the equalized or assessed valuation of all the tangible property of the corporation to be de-

ducted from the aggregate amount of the market or fair cash value of the shares of capital stock and the market or fair cash value of the debt, excluding indebtedness for current expenses, making no provision for the equalization of these amounts with the assessment of other property, while the present rule 11 of the tax commission requires that before the deduction shall be made the value of the shares of capital stock and the debt shall be equalized so that the corporations shall be assessed, as nearly as practicable, upon a uniform basis with other property throughout the State. This change in the rule was made many years ago and has been in force for more than twenty years. It was approved in *Calumet and Chicago Canal and Dock Co.* v. *O'Connell,* 265 Ill. 106, and in *Calumet and Chicago Canal and Dock Co.* v. *Stuckart,* 275 id. 253. In *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164, and *People* v. *St. Louis Bridge Co.* 290 id. 307, the capital stock assessments of the corporations which were the complainants in those cases were set aside because they were not made in accordance with the rule, and it was held that an assessment of capital stock could be made only in case the equalized fair cash value of the shares of capital stock exceeded the equalized value of tangible property. In neither the earlier cases cited in 76 Ill. and 191 Ill. under the old rule, nor the later cases cited under the new rule, was any question raised as to the validity of the rule on the ground that the equalized or assessed valuation of the tangible property should be deducted from the sum of the market or fair cash value of the shares of capital stock and the debt, or that the deduction should not be made until the market or fair cash value of the shares of capital stock and the debt should be equalized with the assessment of other property. That question was neither argued by counsel nor considered by the court. It was said by the court in *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 Ill. 591: "Without attempting to justify the wisdom or entire accuracy of this

rule, we said in *Porter et al.* v. *R., R. I. & St. L. R. R. Co.* (January term, 1874,) and reported in 76 Ill. 561, that as in our opinion an approximation to the required valuation might be thus obtained, we could not hold that the mere adoption and application of the rule were sufficient evidence of fraud upon the part of the board of equalization, or that property had been assessed against the corporation which did not belong to it, upon which it was to be taxed, to authorize a court of chancery in interfering by way of injunction. This, of course, implied that the rule should be adhered to and faithfully applied in the several assessments to which it was applicable." The rule announced in these decisions was consistently adhered to for many years. Later the board of equalization adopted a rule on the subject which was practically the same as the present rule 11 of the tax commission, and since the adoption of that rule it has been as consistently applied as was the previous rule, which was adopted in 1873. While that particular provision of the rule which required the equalization of the sum of the fair cash value of the shares of capital stock and the amount of indebtedness, so that corporations should be assessed, as nearly as practicable, upon a uniform basis with other property throughout the State, has never been presented to the court for adjudication as to its validity, and has therefore not been discussed in the opinion in any of the cases which have been cited, yet in *People's Gas Light and Coke Co.* v. *Stuckart, supra,* the reason appears why it is essential to uniformity of taxation that the value of the shares of capital stock and debt should be equalized before the equalized value of the tangible property is deducted in order to determine the assessed value of the capital stock of the corporation, including the franchise over and above the tangible property. It was there said: "One person can not be compelled to pay a greater proportion of taxes, according to the value of his property, than another, and where assessors have disregarded the injunction of the law

and made an assessment of property far below its real cash value, their misconduct must also follow the principle of uniformity and their assessments of all persons must be at the same proportional value." (Citing authorities.) In *Sunday Lake Iron Co. v. Wakefield Township,* 237 U. S. 350, it is said: "The purpose of the equal protection clause of the fourteenth amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents; and it must be regarded as settled that intentional, systematic under-valuation by State officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property.—*Raymond v. Chicago Union Traction Co.* 207 U. S. 20, 35, 37."

The answer shows, and the demurrer admits, that tangible property, instead of being assessed at its fair cash market value as required by the statute, has been for many years uniformly assessed in this State at sixty per cent of its fair cash market value. Clearly, if the capital stock of a corporation is assessed at its full value and its tangible property is deducted only at sixty per cent of its value, the result would be to produce an excessive valuation of the capital stock of the corporation in comparison with other property throughout the State and to compel the corporation to pay a greater proportion of taxes according to the value of its property than the owners of other property, and would thus destroy the uniformity of taxation required by the constitution.

The demurrer to the answer was properly overruled, and the judgment will be affirmed.    *Judgment affirmed.*